756 F.2d 902
 244 U.S.App.D.C. 193, 53 USLW 2476
 Chris L. GOTT, et al.
v.
Harry N. WALTERS, Administrator of Veterans' Affairs,
Veterans' Administration, et al., Appellants.
Chris L. GOTT, et al.
v.
Harry N. WALTERS, et al., Appellants.
Chris L. GOTT, et al.
v.
Harry N. WALTERS, et al., Appellants.
 Nos. 82-1159, 82-1448 and 82-1454.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 3, 1982.
Decided March 22, 1985.
Rehearing En Banc Granted June 10, 1985.*
 
 Appeals from the United States District Court for the District of Columbia (Civil Action No. 80-0906).
 Marc Johnston, Atty. Dept. of Justice, Washington, D.C., for appellants. Stanley S. Harris, U.S. Atty., Washington, D.C., (at the time the brief was filed), William Kanter and Frederick Geilfuss, Attys. Dept. of Justice, Washington, D.C., were on the brief, for appellants.
 Lewis M. Milford, Washington, D.C., with whom Ronald Simon, Washington, D.C., was on brief, for appellees.
 Before WALD, BORK and SCALIA, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SCALIA.
 Dissenting opinion filed by Circuit Judge WALD.
 SCALIA, Circuit Judge:
 
 
 1
 This case involves certain documents and methodologies used by the Veterans' Administration ("VA") to help determine claims of injury from exposure to radiation during military service. The complaint is that they were issued and adopted without complying with the rulemaking procedures and publication requirements[1] of the Administrative Procedure Act ("APA").[2] The Administrator of Veterans' Affairs appeals from the District Court's denial of his motion for summary judgment, and its grant of summary judgment for the plaintiffs. The only issue we find it necessary to resolve is whether the statutory preclusion of judicial review of VA decisions, 38 U.S.C. Sec. 211(a) (1982), applies to this case.
 
 
 2
 * American servicemen were exposed to radiation during cleanup operations after the bombing of Hiroshima and Nagasaki, and at a series of above-ground tests of nuclear weapons conducted between 1946 and 1961. At the time, the health effects of exposure to the levels of radiation involved were poorly understood, and to this day are not fully known. Years after their exposure, veterans continue to file claims with the government for health care and compensation for diseases assertedly resulting from the radiation. To succeed, a veteran must establish that his malady was "contracted in line of duty," 38 U.S.C. Secs. 310, 331 (1982)--which is frequently the critical obstacle, since there is usually no dispute concerning the claimant's current medical condition. In order to prevail on this issue of so-called "service connection," a veteran need only raise a reasonable doubt. 38 C.F.R. Sec. 3.102 (1984).
 
 
 3
 The handling of these radiation claims by the VA and Department of Defense ("DoD") became the subject of a Congressional investigation in June 1979, following which the agencies issued various documents dealing with the subject: a Memorandum of Understanding between the VA and DoD, issued June 15, 1979, a VA Radiation Program Guide issued August 21, 1979, and VA Radiation Claims Procedures issued September 10, 1979. Two revised versions of the Guide have since been issued.
 
 
 4
 The plaintiffs in this case, a group of veterans, veterans' wives and veterans' organizations, challenged as violations of the APA the failure to provide notice and comment procedures for the Program Guide, Claims Procedures and Memorandum, and the failure to publish the latter two in the Federal Register.[3] On cross-motions for summary judgment, the District Court found that all three documents were rules within the meaning of the APA, and that the VA's failure to conduct an informal rulemaking before issuing them rendered them invalid. It denied summary judgment to the government and granted it to the plaintiffs. Gott v. Cleland, Civil No. 80-0906 (D.D.C. Sept. 30, 1981) (Order). Subsequent rulings by the District Court clarified or extended the scope of that judgment. In denying plaintiffs' request for additional individual relief to those claimants who had been denied benefits on the basis of the documents, the court suggested that the VA was obliged to reconsider any such denial if asked by claimants to do so. Gott v. Cleland, Civil No. 80-0906 (D.D.C. Dec. 15, 1981) (Order). Still later, the plaintiffs moved to hold the VA in contempt for continuing to use radiation data obtained from DoD in accordance with the invalidated Memorandum. In a supplemental opinion and order, the District Court denied the contempt motion without prejudice, explained that the methodologies established by the Memorandum were within the scope of its original order, and required the VA to conduct a rulemaking before using them. It also ordered the VA to submit a timetable for compliance within sixty days and to conduct a rulemaking within ninety days. Gott v. Nimmo, Civil No. 80-0906 (D.D.C. Feb. 17, 1982); see also Gott v. Nimmo, Civil No. 80-0906 (D.D.C. July 21, 1982) (Order modifying dates for compliance). The VA moved for clarification of the order, contending that the methodologies had been improperly included because they were outside the scope of the litigation, and for a stay pending appeal. The court denied the motions on March 26, 1982. Gott v. Nimmo, Civil No. 80-0906 (Order). On May 20, the VA and DoD published proposed radiation rules. They have declared that these will be withdrawn if this appeal succeeds.
 
 
 5
 The VA appeals from the grant of summary judgment, from the District Court's February 17, 1982 order regarding methodology, and from the order of March 26, 1982.
 
 II
 
 6
 We are confronted at the outset with a jurisdictional problem, raised and argued in the District Court, but not asserted on this appeal[4]--though addressed briefly in appellees' Supplemental Brief. Since we consider it substantial, and since it pertains to our power to decide this case, we feel compelled to address it on our own.
 
 
 7
 The appellees brought their suit in district court under 5 U.S.C. Secs. 702-704 (1982). These provisions make "final agency action ... subject to judicial review," 5 U.S.C. Sec. 704, at the behest of "[a] person suffering legal wrong ... or adversely affected or aggrieved ... within the meaning of a relevant statute," 5 U.S.C. Sec. 702. These sections do not apply, however, to the extent that "statutes preclude judicial review." 5 U.S.C. Sec. 701(a)(1). As the Supreme Court has most recently expressed the test for such preclusion: "[W]here substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling," but that presumption is overcome whenever "congressional intent to preclude judicial review is 'fairly discernible' in the detail of the legislative scheme." Block v. Community Nutrition Institute, --- U.S. ----, 104 S.Ct. 2450, 2457, 81 L.Ed.2d 270 (1984) (quoting Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 (1970)). Such intent may be found on the basis of "specific language or specific legislative history," "contemporaneous judicial construction barring review and the congressional acquiescence in it," or "inferences of intent drawn from the statutory scheme as a whole." Block v. Community Nutrition Institute, 104 S.Ct. at 2456.
 
 
 8
 The statute that appears to preclude review here is 38 U.S.C. Sec. 211(a) (1982), which provides (with exceptions not here relevant) that
 
 
 9
 the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.
 
 
 10
 In the portion of their Supplemental Brief dealing with Sec. 211(a), appellees assert that this provision is inapplicable here by its terms, since the legal question on which the Administrator's decision is challenged--viz., the necessity vel non of rulemaking procedures--"arises under the APA, not 'under the statute' concerning veterans benefits." Supplemental Brief for Appellees at 4. We reject this analysis, which relies upon a lengthy dictum of this court in Kirkhuff v. Nimmo, 683 F.2d 544, 546-48 (D.C.Cir.1982). Central to the reasoning of Kirkhuff was its statement that the Supreme Court, in Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), held that constitutional challenges "were not barred by Sec. 211(a) because they involved questions of law arising 'under the Constitution,' rather than 'under the statute.' " 683 F.2d at 547, quoting 415 U.S. at 367, 94 S.Ct. at 1166. The statement is true, but it does not lead to the conclusion that the Kirkhuff dictum suggests. As our more extended discussion of Robison below will explain, see pages 911 - 12, infra, the consequence of the fact that the case presented a question (concerning the validity of the statute) "under the Constitution" was not that therefore it did not present a "question of law ... under any law administered by the Veterans' Administration" within the meaning of Sec. 211(a); but rather, that therefore there had been no "decision of the Administrator" within the meaning of Sec. 211(a), since the Administrator does not consider the constitutionality of the statutes he is directed to administer (as he does consider the compliance of his regulations with the APA). It was, the Court concluded, a decision of the Congress rather than of the Administrator that was under review. The interpretation of Sec. 211(a) appellees suggest--requiring that the Administrator's decision be challenged specifically on a question of law pertaining to the text of the veterans' benefit statutes--is unthinkable, since it would open up even individual claims adjudications to review for compliance with the APA's legal requirement of adequate evidentiary support, 5 U.S.C. Sec. 706(2)(A), a result we have of course rejected, see Carter v. Cleland, 643 F.2d 1, 5 (D.C.Cir.1980). All that is necessary for Sec. 211(a) to apply is that the question of law or fact have been decided by the Administrator, and that the decision have been made in the course of applying the veterans' benefit statutes. In other words, the provision should be read "decisions of the Administrator (on any question of law or fact) under any law administered by the Veterans' Administration" rather than "decisions of the Administrator, on any question of law or fact under any law administered by the Veterans' Administration."[5] Thus, issues of law not decided by the Administrator (Robison ) are excluded; as are issues of law decided by the Administrator not in the course of a determination under the veterans' benefit laws, but in the course of applying independently operative statutes such as the provisions of the Freedom of Information Act not related to the procedure for administrative decisionmaking, see Leib v. Veterans' Administration, 546 F.Supp. 758, 759 n. 4 (D.D.C.1982).[6] But the Administrative Procedure Act operates (insofar as is pertinent here) only by regulating the manner in which determinations under the benefit laws must be made, and any administrative decision concerning that issue is a decision "under" the benefit laws in the relevant sense.
 
 
 11
 Supreme Court cases dealing with an analogous statutory provision precluding judicial review support the foregoing analysis. See Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S.Ct. 2457, 2464-65, 45 L.Ed.2d 522 (1975):
 
 
 12
 It would, of course, be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that this action does not also arise under the Social Security Act [within the meaning of 42 U.S.C. Sec. 405(h) (1982) ]. For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions.
 
 
 13
 See also Heckler v. Ringer, --- U.S. ----, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984) (claims that the Secretary of Health and Human Services failed to comply with rulemaking requirements of APA and wrongfully decided certain issues by rulemaking rather than adjudication "arise[ ] under" the Medicare Act).
 
 
 14
 It would appear, therefore, that the "specific language" of Sec. 211(a) bars us from reviewing the validity of the documents and methodologies in controversy here. In the District Court, however, the appellees argued that application of Sec. 211(a) may be avoided on two grounds. First, they claimed that the word "decisions" refers only to adjudications of individual veterans' claims and not to the promulgation of regulations. Second, they claimed that even if the provision bars judicial review of regulations for some purposes, e.g., to ensure that their substance is not arbitrary or capricious, it does not preclude review to ensure that regulations do not exceed the VA's statutory authority (which excess they deem to include the issuance of regulations in violation of the APA). We treat each of these contentions in turn.
 
 
 15
 The Contention that All Rulemaking Is Subject to Judicial Review
 
 
 16
 The principal evidence adduced for the proposition that Sec. 211(a) reaches no rulemaking is the prior version of the statute. From 1957 to 1970, Sec. 211(a) read:
 
 
 17
 [T]he decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision.
 
 
 18
 Veterans' Benefits Act of 1957, 71 Stat. 83, 92 (1957) (emphasis added). The appellees take it as a given that in that earlier version the word "decisions" referred only to adjudications of individual claims, and contend that the 1970 amendments merely reaffirmed that bar to review.
 
 
 19
 It seems to us far from self-evident that a regulation governing veterans' benefits would not have been considered a "decision[ ] ... on [a] question of law ... concerning a claim for benefits" under the earlier version. The language in question dates back to 1940, cf. Daylo v. Administrator of Veterans' Affairs, 501 F.2d 811, 813 n. 10 (D.C.Cir.1974), an era in which the adoption of principles governing adjudications by rule was rare (and thus unlikely to be specifically addressed in such a statute) and in which, under then current notions of ripeness, rules could in any event not be challenged until applied in the course of an adjudication. See generally Scalia, Vermont Yankee: The APA, the D.C. Circuit, and the Supreme Court, 1978 SUP.CT.REV. 345, 375-77 (1979). The 1940 enactment was accompanied, moreover, by the statement (in the Senate Finance Committee Report) that it "provides for the finality of decisions made by the Administrator of Veterans' Affairs on questions relating to claims under any of the laws administered by the Veterans' Administration." S.REP. NO. 2198, 76th Cong., 3d Sess. 11 (1940) (emphasis added). In addition, the 1940 version was described in the Senate debate as "not so much a limitation as a restatement of what is believed to be the law upon the question," 86 CONG.REC. 13,383 (1940) (remarks of Sen. George); and the then existing law consisted of Sec. 5 of the Economy Act of 1933, ch. 3, 48 Stat. 9, which provided that "[a]ll decisions rendered by the Administrator of Veterans' Affairs under the provisions of this title ... shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision"--a formulation more equivalent to the current provision than to the 1940-to-1970 version. If the pre-1970 language is to be used to contradict the apparent meaning of the present statute, then it is only fair that the 1933 statute be used to contradict the apparent meaning of the pre-1970 language. In any case, we need not decide this question, since even if the appellees' view of the pre-1970 law is correct, there is nothing to indicate that the 1970 amendment of Sec. 211(a) was meant, despite its language, to perpetuate it.
 
 
 20
 If we had no specific information on Congress's intentions in removing the participial phrase "concerning a claim for benefits or payments," the natural conclusion would be that Congress meant to make clear, among other things, that the class of unreviewable decisions included more than individual adjudications. The appellees, however, contend that we do have specific information on Congress's intentions, which points to one purpose: to overrule a line of cases in this circuit finding that a decision on the part of the VA to terminate benefits was not a "decision[ ] ... concerning a claim" because it was initiated by the VA, not by a claimant. Plaintiffs' Reply to Defendants' Memorandum in Support of Motion to Dismiss, etc., at 10-11 & n. 21 (filed Sept. 4, 1981). See H.R.REP. NO. 1166, 91st Cong., 2d Sess. 10 (1970), reprinted in 1970 U.S.CODE CONG. & AD.NEWS 3723, 3731, rejecting the "fairly tortured construction adopted by the court of appeals in the Wellman [v. Whittier, 259 F.2d 163 (D.C.Cir.1958) ], Thompson [v. Gleason, 317 F.2d 901 (D.C.Cir.1962) ], and Tracy [v. Gleason, 379 F.2d 469 (D.C.Cir.1967) ] holdings."
 
 
 21
 Overruling that line of cases was undeniably Congress's principal purpose in the amendment. The legislative history shows, however, that Congress also thought it was preventing judicial review of regulations--whether by way of amending the preexisting law or (as seems more likely) by way of clarifying the prior understanding. The same House report relied upon by the appellees sets forth a letter from the VA, which it describes as "discuss[ing] in detail" "the events that have transpired in recent years which gave rise to this amendment," H.R.REP. NO. 1166, supra at 8, 1970 U.S. CODE CONG. & AD.NEWS 3729. That letter, referring to the "353 suits of [the Wellman-Thompson-Tracy ] type ... filed in the District of Columbia circuit," id. at 21, 1970 U.S. CODE CONG. & AD.NEWS 3740, stated that
 
 
 22
 suits similar to the several hundred already filed can--and undoubtedly will--subject nearly every aspect of our benefit determinations to judicial review, including rating decisions, related Veterans' Administration regulations, Administrator's decisions, and various adjudication procedures.
 
 
 23
 Id. at 23-24, 1970 U.S. CODE CONG. & AD.NEWS 3742 (emphasis added). It is true that the VA's letter endorsed an amendment to Sec. 211(a) different from that which the Committee proposed and Congress adopted.[7] But that is beside the point. The point is that the Committee, by including the VA's letter in its Report, referred to the danger of review of regulations as one of the evils that "gave rise" to the amendment which it proposed. This would, of course, be weak legislative history to establish that a statute which referred only to "decisions ... concerning a claim for benefits or payments" was meant to cover decisions concerning regulations. But it is more than enough to refute an appeal to legislative history to establish that a statute which refers to "decisions ... on any question of law or fact under any law administered by the Veterans' Administration" does not cover decisions concerning regulations.
 
 
 24
 Coverage of regulations is further supported by the basic purposes of Sec. 211(a), which the Supreme Court has said are twofold: first, to prevent the courts from becoming "involve[d] ... in day-to-day determination and interpretation of Veterans' Administration policy," with the accompanying prospect of " 'judicial review of millions of decisions terminating or reducing many types of benefits' "; and second, "to insure that the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits will be adequately and uniformly made," Johnson v. Robison, 415 U.S. at 370, 372, 94 S.Ct. at 1167, 1168, quoting H.R.REP. NO. 1166, supra at 24, 1970 U.S. CODE CONG. & AD.NEWS 3742-43.
 
 
 25
 Review of the substance of regulations obviously would frustrate the second of these purposes. Regulations are at least as likely as adjudications to involve "technical and complex" policy determinations regarding benefits. In fact the appellees' principal complaint about the documents at issue here is that they are for all practical purposes final decisions of issues which would otherwise be resolved by adjudication: the health effects of exposure to low levels of radiation, the kinds of diseases radiation may cause, and the best method for calculating the dosages of radiation to which appellees were exposed. It is hard to see why these determinations are too technical and complex to be "adequately" reviewed in the context of individual adjudications, but less so when reviewed in the context of rulemaking; or why the destruction of "uniformity" in these determinations--presumably attributable to the differing views of the various federal circuits as opposed to the unitary view of the Administrator--is any more tolerable when achieved through review of rules than through review of the same policies adopted in adjudication.[8]
 
 
 26
 Moreover, both review of the substance of regulations and review of the procedures by which they are adopted conflict with the first purpose the Supreme Court found Congress was pursuing in enacting Sec. 211(a)--avoiding the courts' embroilment in numerous individual claims decisions. That is evident from considering what would happen in this case if we were to proceed with review of the appellees' complaint that the documents and methodologies at issue are substantive regulations and therefore should have been adopted in accordance with informal rulemaking procedures. All parties to this litigation agree that whether they are substantive regulations turns on whether they are given a dispositive effect in the adjudication of individual claims. The VA asserts they are not determinative, the appellees the contrary. It is quite impossible to resolve this issue without looking at the actual use of the documents and methodologies in individual proceedings. But even if we were to resolve it on some philosophical basis, and were to conclude that the documents and methodologies are dispositive, are substantive rules and therefore are improperly adopted, it is difficult to imagine any effective order we could issue. In prohibiting the VA from giving them binding legal effect, we would be telling the VA not to do what it believes it is not doing anyway. It would presumably continue to act as it says (though we disagree) it has been acting--and how would we ever stop that behavior? Our order is a vain act, in other words, unless we can review subsequent adjudications for compliance. And that will always be so, with regard to any regulation that governs the adjudication of claims. Review of such regulations, therefore, either frustrates the first purpose of Sec. 211(a) described by the Supreme Court, or else requires the courts to issue embarrassingly impotent mandates. The former consequence is not, given the Supreme Court's pronouncement, a permissible assumption of legislative intent; and the latter is not a plausible one.
 
 
 27
 Therefore, in light of the language, the legislative history, and the purposes of Sec. 211(a), we reject the appellees' argument that it does not bar review of regulations.
 
 
 28
 The Contention that Ultra Vires Rulemaking Is Subject to Judicial Review
 
 
 29
 The appellees advanced in the District Court the further argument that even if some types of judicial review of regulations, such as review to ensure that they are not arbitrary or capricious, or review to ensure that they have adequate evidentiary support, are barred by Sec. 211(a); the type of review they seek here, merely to assure that the APA's procedural requirements have been observed, is not barred. They rely for that proposition upon decisions in other circuits holding that Sec. 211(a) does not preclude judicial review of regulations to ensure that they do not exceed the VA's statutory authority, citing Wayne State University v. Cleland, 590 F.2d 627 (6th Cir.1978), and cases that accept the reasoning of that opinion without additional analysis, University of Maryland v. Cleland, 621 F.2d 98 (4th Cir.1980); Evergreen State College v. Cleland, 621 F.2d 1002 (9th Cir.1980); Merged Area X (Education) v. Cleland, 604 F.2d 1075 (8th Cir.1979). Plaintiffs' Reply to Defendants' Memorandum in Support of Motion to Dismiss, etc., at 12-13 (filed Sept. 4, 1981).
 
 
 30
 We note in passing that if there is a meaningful line between unlawful action in excess of authority and unlawful action not in excess of authority, it is not immediately apparent why failure to comply with procedural forms would fall into the former rather than the latter category. And that the Wayne State court, curiously enough, after having established to its satisfaction its power to review only "the Administrator's authority to promulgate regulations," 590 F.2d at 632 (footnote omitted), proceeded to consider not only "whether the regulations were promulgated in excess of statutory authority"; and not only (as we have said, less logically) "whether the agency followed necessary procedural requirements in the promulgation of the regulations"; but also whether the regulations were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (which is, of course, everything else). Id. at 632-33. So that if one is guided by what Wayne State ultimately did rather than by what Wayne State initially said, there seems to be no difference between this present argument of the appellees and the argument discussed earlier: all aspects of regulations appear to be reviewable. But no matter. We have examined the appellate cases that (in their formulation at least) limit review of VA rules to the authority for their promulgation, and find them unpersuasive.
 
 
 31
 Wayne State rested upon the assumption that " 'clear and convincing' evidence of congressional intent [is] required by the Supreme Court before a statute will be construed to restrict access to judicial review," 590 F.2d at 632, citing, inter alia, Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). This assumption is likewise quoted by the only one of the three appellate cases following Wayne State which devotes more than two paragraphs to this issue, see University of Maryland v. Cleland, 621 F.2d at 100. Subsequent Supreme Court authority makes clear, however, that a "clear and convincing evidence" test, in the normal sense in which we and other courts had interpreted that phrase, does not apply:
 
 
 32
 This Court has ... never applied the "clear and convincing evidence" standard in the strict evidentiary sense the Court of Appeals thought necessary in this case. Rather, the Court has found the standard met, and the presumption favoring judicial review overcome, whenever the congressional intent to preclude judicial review is "fairly discernible in the statutory scheme." Data Processing Service v. Camp, 397 U.S. at 157 [90 S.Ct. at 832]. In the context of preclusion analysis, the "clear and convincing evidence" standard is not a rigid evidentiary test but a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling. That presumption does not control in cases such as this one, however, since the congressional intent to preclude judicial review is "fairly discernible" in the detail of the legislative scheme.
 
 
 33
 Community Nutrition Institute v. Block, 104 S.Ct. at 2457.
 
 
 34
 Even apart from its faulty assumption, the reasoning of Wayne State is wanting. It rests its conclusion upon an analysis it claims to derive from Johnson v. Robison, supra, in which the Supreme Court found that Sec. 211(a) did not bar judicial review of the claim that a portion of the VA statute was unconstitutional. As the Wayne State court interpreted Robison, the Supreme Court reached its conclusion by analyzing the purposes of Sec. 211(a) and finding that review of adjudications to ascertain whether they were based on an unconstitutional statute would not be contrary to those purposes. But that is not so.[9] The Robison opinion did not proceed immediately to the issue of whether review would offend the policies of Sec. 211(a), but began where one ordinarily begins, with the language of the statute. It found that the phrase "decisions of the Administrator" in Sec. 211(a) did not appear to apply to review of the constitutionality of the statute under which the Administrator acted, since the terms of the statute were decisions not of the Administrator, but of Congress. 415 U.S. at 367, 94 S.Ct. at 1165. It adduced support for this conclusion from the VA's practice of refusing to consider the constitutionality of its governing laws on the ground that it lacked authority to do so, a principle generally accepted by other agencies and authorities as well. Id. at 367-68, 94 S.Ct. at 1165-66. Only then, after having assessed the reasonable meaning of the statutory text, did the Court reach a discussion of the policies underlying the statute, introducing that discussion as follows: "Nor does the legislative history accompanying the 1970 amendment of Sec. 211(a) demonstrate a congressional intention to bar judicial review even of constitutional questions." 415 U.S. at 368, 94 S.Ct. at 1166. As the Supreme Court described its Robison holding in a later case:
 
 
 35
 We were required to resolve whether this language [of Sec. 211(a) ] precluded an attack on the constitutionality of a statutory limitation. We concluded that it did not, basically because such a limitation was not a "decision" of the Administrator "on any question of law or fact"; indeed, the "decision" had been made by Congress, not the Administrator, and the issue was one which the Administrator considered to be beyond his jurisdiction.... Thus the question sought to be litigated was simply not within Sec. 211(a)'s express language....
 
 
 36
 Weinberger v. Salfi, 422 U.S. at 761, 95 S.Ct. at 2465.
 
 
 37
 The Wayne State court suggests no similar basis for excluding from the express language decisions regarding regulations' compliance with statutory requirements. These are assuredly decisions that can and indeed must be made by the Administrator himself. In the absence of a term in the statute permitting such a distinction, all the policy analysis in the world cannot persuade us that Sec. 211(a)'s bar applies to one sort of review and not another.[10]
 
 
 38
 Finally, a powerful analytical objection to the proposed interpretation is that there is no principled reason to limit it to review of regulations. Once it is conceded that the phrase "decisions ... under any law administered by the Veterans' Administration" does not cover a decision that is ultra vires, there is no basis for declining to review the proper authority (whatever that vague term may mean) for adjudications as well. No one thinks that is permissible under Sec. 211(a).
 
 The Contentions of the Dissent
 
 39
 The dissent misreads the legislative history, as our discussion above adequately indicates. Beyond that, however, the dissent uses the legislative history--as it uses the dicta of Robison --not to clarify any ambiguity in the statute, but to create a meaning which it never seeks to relate to the text of the statute, and which in fact the text simply will not bear. Only one interpretation of the statutory language other than that which we have adopted is conceivable. It can be argued, contrary to our discussion at pages 906 - 07, supra, that the phrase "under any law administered by the Veterans' Administration" modifies the phrase "question of law or fact" rather than the word "decisions," with the consequence that not all decisions of the Administrator in the course of applying the VA statutes are included, but only those decisions specifically relating to the interpretation or coverage of those statutes. But as we have noted, if that were the correct interpretation, then decisions regarding the application of APA procedures (which is not a question of law under the VA statutes) would be reviewable in adjudications as well as in rulemakings.[11] In order to avoid this consequence, the dissent must import into Sec. 211(a) an additional limitation--to wit, limitation of the preclusion of judicial review to individual adjudications as opposed to rulemakings. There is simply no language in the statute on which such a restriction can be hung; in fact, the phrase "decisions on any question of law " positively tends to negate it.
 
 
 40
 There is, moreover, another factor that contradicts both the dissent's application of its implausible textual interpretation to this case and its imported extratextual limitation: For simplicity's sake, we have been speaking as though the issue before us was the application of APA procedures to this alleged rulemaking. See note 2, supra. In fact, however, the APA rulemaking requirements do not apply, since the APA specifically excludes from its rulemaking provisions rules relating to government benefits. 5 U.S.C. Sec. 553(a). What is technically at issue is the VA's failure to comply with its own veterans' benefit regulations, see 38 C.F.R. Sec. 1.12 (1984), which of course did not repeal the "government benefits" exception of the APA, but merely adopted the substance of the APA provisions as requirements under the veterans' benefit statutes. Compliance with those requirements thus presents, technically, a question of law under the veterans' benefit statutes rather than under the APA. Hence, one cannot argue that review is proper in this case even if one believes that Sec. 211(a) is limited as the dissent asserts.[12] The statutory exemption of veteransCITE, 244 U.S.App.D.C. 205>>ans' benefits from APA rulemaking requirements also suggests the invalidity of the attempt to limit Sec. 211(a) to individual adjudications. It is implausible, to say the least, that Congress should have taken such care (unexpressed though it might have been) to single out VA rulemaking procedures, as opposed to VA adjudicatory procedures, for judicial review while at the same time exempting VA rulemaking (though not adjudication) from procedural requirements.
 
 
 41
 The dissent's citations to case authority suffer from the fact that the cases permitting review do not set forth the precise rationale of reviewability adopted by the dissent, nor (as our discussion above has indicated) any intelligible theory of their own--vacillating among theories that all rulemaking is exempt, e.g., University of Maryland v. Cleland, 621 F.2d 98, 101 (4th Cir.1980); Merged Area X (Education) v. Cleland, 604 F.2d 1075, 1078 (8th Cir.1979), that only ultra vires rules are exempt, e.g., Wayne State University v. Cleland, 590 F.2d 627, 631-32 (6th Cir.1978), and that all unconstitutional action is exempt, e.g., Devine v. Cleland, 616 F.2d 1080, 1084-85 (9th Cir.1980); Plato v. Roudebush, 397 F.Supp. 1295, 1302-03 (D.Md.1975). We may note in this connection that the dissent's allusion to the "serious constitutional problems" which our interpretation entails, Dissent at 921, forms no basis for distinguishing the dissent's position from our own. If it is a proposition of law that constitutional challenges cannot be excluded from the courts, but see Ex parte McCardle, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869), exceptions would have to be made to the dissent's interpretation of the statute as well as to our own--for surely a constitutional issue may arise in the course of adjudications, which are excluded from review even under the dissent's analysis.
 
 
 42
 A brief word is necessary concerning the dissent's use of what has become known (with a disappointing lack of sense for the paradoxical) as "subsequent legislative history"--i.e., legislative "history" that postdates the statute in question. The dissent notes that the Senate-passed version of the recently enacted Veterans' Dioxin and Radiation Exposure Compensation Standards Act, see note 4, supra, provided that the VA's rules on radiation compensation standards would be subject to judicial review; and that this provision "was eventually dropped on the explicit assumption of its leading proponent [Sen. Simpson], relayed to the Senate, that judicial review ... was already available under section 211(a)." Dissent at 926. It seems to us that the use by Senator Simpson and other members of his committee of self-created legislative history to achieve the result they were unable to obtain through the legislative process is precisely the sort of "history" we should steadfastly reject. If Congress as a whole indeed agreed that judicial review was already available, how to explain Senator Cranston's statement that "[a]s our negotiations with the House committee on this legislation progressed ... I become [sic ] concerned that permanently holding firm to my position on including an express reference to access to court review might prevent our ever reaching an overall compromise"? 130 CONG.REC. S13598 (daily ed. Oct. 4, 1984). See also 130 CONG.REC. H11160 (daily ed. Oct. 3, 1984) (statement of Rep. Hammerschmidt) (compromise between House and Senate on Dioxin and Radiation Act possible only because "[t]he Senate ... recede[d] from its position on judicial review"). It is difficult to believe that the House would be so adamant about the impropriety of reciting law that already existed--or that if the adverse implications of redundancy were its only concern, a statement similar to Senator Simpson's would not have appeared in the record of the House proceedings. From the standpoint of the dissent's case, one must consider the legislative history of the recent enactment to be at best non-probative, and more likely an indication that Congress does not desire review of VA rulemaking.
 
 
 43
 Finally, we may respond to the dissent's assertions that "Congress ... relied in its 1984 legislation on the Administrator's opinion that section 211(a) does not preclude judicial review of unlawfully promulgated VA rules," Dissent at 927, and that "the Administrator has consistently indicated to Congress that the no-review clause does not ... preclude judicial review ... [whenever the VA makes any] 'decision' relating to veterans' benefits law." Id. at 928 (emphasis added). As our earlier discussion has indicated, in failing to write a provision for judicial review into the Dioxin and Radiation Act, Congress appears to have relied, not on the Administrator's "clearcut ... interpretation of section 211(a)," id. at 928, but on the House's clearcut insistence that it would not pass a bill which included a judicial review provision. Moreover, the word "consistently" is singularly inappropriate to describe the Administrator's position over the past 30 years. Of the seven position statements cited by the dissent, Dissent at 927-28, one states that "VA ... regulations in excess of lawful authority " are reviewable, 130 CONG.REC. S13600 (daily ed. Oct. 4, 1984) (statement of Sen. Cranston, quoting VA Administrator Walters) (emphasis added); a second states that all regulations and " 'substantive Agency actions of broad, binding application' " are reviewable, Letter from Administrator Robert Nimmo to Sen. Alan Cranston (Mar. 29, 1982), reprinted in 130 CONG.REC. S6160 (daily ed. May 22, 1984); a third and fourth suggest, if anything, that review of regulations is precluded by Sec. 211(a), S.REP. NO. 178, 96th Cong., 1st Sess. 93 (1979); H.R.REP. NO. 1166, 91st Cong., 2d Sess. 23-24 (1970); a fifth and sixth simply cite cases allowing review of constitutional challenges to VA statutes, rulemakings or adjudications, and endorse legislation explicitly providing for such review, FY '78 Legislative Recommendations of Veterans' Organizations: Hearings Before the Senate Comm. on Veterans' Affairs, 95th Cong., 2d Sess. 382-83 (1978); VA Administrative Procedure and Judicial Review Act: Hearings Before the Senate Comm. on Veterans' Affairs, 95th Cong., 1st Sess. 6-9 (1977); and the seventh merely notes the (pre-1970) statute's preclusion of review of individual claims in the course of opposing legislation that would allow review of benefit determinations, Hearings on H.R. 360, 478, 2442 and 6772 Before a Subcomm. of the House Comm. on Veterans' Affairs, 82d Cong., 2d Sess. 1962-63 (1952). Thus, all except the first two are entirely compatible with our holding here, and not a single one reflects the position of the dissent that both constitutional challenges and challenges to APA rulemaking procedures (but not the substance of rules) are permissible. In any case, it is fanciful to regard these diverse pronouncements as a "consistent" endorsement of anything.
 
 
 44
 * * *
 
 
 45
 * * *
 
 
 46
 The dissent "simply cannot believe that section 211(a) was intended to allow the VA to defy with impunity the traditional, government-wide constraints on agency action" as far as rulemaking is concerned, Dissent at 919 n. 3. Yet it is forced to accept precisely that conclusion (if one considers the absence of judicial review to constitute "impunity") with respect to VA adjudications --even though individualized determinations have traditionally been accorded more rather than less judicial protection against agency error than generally applicable rules. Compare Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915), with Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908). See United Gas Pipe Line Co. v. FPC, 181 F.2d 796, 798-99 (D.C.Cir.1950). It seems to us that what is truly incomprehensible to the dissent, and to those courts that have improvised assorted nonstatutory limitations upon the scope of Sec. 211(a), is not the nonreviewability of rules or of APA rulemaking procedures in particular, but rather the whole concept of a system of administrative justice, even in a field of government benefits, without general judicial supervision. That concept, however, is preciselyE, 244 U.S.App.D.C. 207>>cisely what the veterans' benefit laws enacted, plainly rejecting the judicialization, and even the lawyerization, of this field. It is reflected not merely in Sec. 211(a), whose predecessor was first enacted in 1933, see pages 907 - 08, supra, but in other venerable provisions permitting claimants to be represented by "the American National Red Cross, the American Legion, the Disabled American Veterans, the United Spanish War Veterans, the Veterans of Foreign Wars, and such other organizations as [the Administrator] may approve," to which organizations "[t]he Administrator may, in his discretion, furnish, if available, space and office facilities," 38 U.S.C. Sec. 3402(a) (1982) (see ch. 867, Sec. 200, 49 Stat. 2031 (1936)); and prohibiting any attorney or other person from charging a veteran for assisting in the presentation of his claim, 38 U.S.C. Sec. 3403, with compensation payable to such persons by the Administrator limited to "$10 with respect to any one claim," id. at Sec. 3404(c)(2) (see ch. 234, Sec. 31, 17 Stat. 575 (1873)).
 
 
 47
 The scheme envisioned by the legislation is, for modern times at least, concededly an extraordinary one: that an agency which is designed and intended to have the interests of the veterans at heart will dispose of matters relating to their claims in a manner different from the adversarial process familiar to the courts, with a minimum of formality, with assistance from veterans' organizations, without assistance from compensated lawyers, and with finality. That scheme, and particularly its exclusion of paid counsel and of judicial review, have drawn sharp criticism from some respected quarters. See, e.g., 102 REPORTS OF THE AMERICAN BAR ASSOCIATION 533-34 (1983). On the other hand, a recent and much praised treatise based upon a study of the government's most extensive individual benefits program, the social security disability program, which has adopted full-scale adversarial process and judicial appeal, concludes that "fundamental reasons ... prevent judicial review from having a major beneficial impact on the quality of administrative justice in the Social Security system," J. MASHAW, BUREAUCRATIC JUSTICE 185 (1983), and observes that the VA system has "managed to maintain an acceptable level of satisfaction with its process without significant use of oral hearings, without employing independent ALJs, and without subjecting its judgments to judicial review." Id. at 142 (footnote omitted).
 
 
 48
 Whatever the pros and cons of that argument may be, short of the point at which the exclusion of judicial involvement becomes unconstitutional (which is not even asserted here), the debate is to be conducted before Congress, and resolution against the presently prescribed system is to be effected by statutory amendment rather than judicial gerrymandering of the existing provisions. As the Supreme Court made clear in Block v. Community Nutrition Institute, 104 S.Ct. at 2457, our function in cases such as this is not to devise plausible ways of depriving statutory language of its apparent meaning, but rather to give honest effect to the "fairly discernible" intent of Congress to preclude judicial review. There is no indication in the text of the statute that rulemaking is excluded from what some regard as this unthinkable prohibition. Both the language of Sec. 211(a) and the reason of the matter leave no doubt in our mind that decisions of the Administrator regarding rules applicable in claims adjudications occupy no different status, insofar as judicial review is concerned, than the claims adjudications themselves, and specifically are not reviewable for procedural deficiencies. Accordingly, we vacate the District Court's entry of summary judgment and remand this case with instructions to dismiss for lack of jurisdiction.
 
 
 49
 So ordered.
 
 WALD, Circuit Judge, dissenting:
 
 50
 In 1979, the Veterans' Administration ("VA") issued three documents concerning the standards and procedures for determining when veterans exposed to radiation by the United States Government are entitled to VA disability benefits. In 1981, the plaintiffs sought a judicial ruling that these documents were agency "rules" subject to the notice and comment provisions of the Administrative Procedure Act (APA), see 5 U.S.C. Sec. 553. The district court, noting that the plaintiffs did not seek review of actual individual benefit determinations, agreed that the documents were rules under the APA, invalidated the rules for failure to comply with the APA's notice and comment provisions, and ordered a formal rulemaking concerning radiation exposure methodology. On appeal, the VA argued that the documents at issue were merely informational guidelines that did not function as agency rules in benefit determinations and were thus not subject to APA rulemaking procedures.[1]
 
 
 51
 The majority now finds it unnecessary to decide that issue because it holds that 38 U.S.C. Sec. 211(a) precludes judicial review of virtually all VA decisionmaking pertaining to veterans' benefits, even a rulemaking conducted in a manner admittedly violative of APA procedures. In my view, the radiation exposure methodology employed by the VA in one of the challenged documents constitutes a "rule" within the meaning of section 2(c) of the APA, 5 U.S.C. Sec. 551(4). And I do not agree that section 211(a)--as interpreted by the Supreme Court in Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)--precludes review of the plaintiffs' claim that such a rule was promulgated in violation of the APA's procedural requirements. No reliable indicator of congressional purpose identified in Robison suggests an intent to preclude the limited judicial scrutiny sought in this case.[2] Notwithstanding the Supreme Court's recent admonition that courts must not be overly fastidious in requiring "clear and convincing evidence" to find congressional intent to preclude judicial review, see Block v. Community Nutritional Inst., --- U.S. ----, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984), "where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." Id. at 2457; see also Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Here I find nothing in the language, purpose, legislative history or overall structure of section 211(a) that evinces the "fairly discernible," Block, 104 S.Ct. at 2457, congressional intent necessary to overcome the general presumption favoring judicial review.
 
 
 52
 I. THE "PLAIN MEANING" OF THE NO-REVIEW CLAUSESE
 
 
 53
 Our inquiry begins with the language of the statute. See, e.g., Robison, 415 U.S. at 367, 94 S.Ct. at 1165. Section 211(a) provides that
 
 
 54
 the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.
 
 
 55
 38 U.S.C. Sec. 211(a) (emphasis added). The majority reads this language as expressly precluding judicial review whenever the Administrator makes any "decision" on any question (either of law or fact) relating to the administration of veterans' benefits law. See Maj.Op. at p. 907. ("All that is necessary for Sec. 211(a) to apply is the question of law or fact have been decided by the Administrator, and that the decision have been made in the course of applying the veterans' benefit statutes.") (emphasis added).
 
 
 56
 The Robison Court, however, indicated that the express language of section 211(a) does not unambiguously admit of the sweeping interpretation urged by the majority. Robison held that section 211(a) does not bar review of constitutional challenges to provisions of the veterans' benefits laws. Unlike the majority opinion, however, the Robison Court did not conclude that Congress' intent to preclude judicial review of VA actions depended solely on whether the disputed action resulted from an actual "decision[ ] of the Administrator." Instead, the Court explained that the no-review clause applied to
 
 
 57
 "the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans".... The prohibitions would appear to be aimed at review only of those decisions of law or fact that arise in the administration by the Veterans' Administration of a statute providing benefits for veterans. A decision of law or fact "under" a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts.
 
 
 58
 Robison, 415 U.S. at 367, 94 S.Ct. at 1165 (quoting 38 U.S.C. Sec. 211(a)) (emphasis in original); see also id. at 372, 94 S.Ct. at 1168 (noting that section 211(a) was designed to prevent courts from becoming "involved ... in a day-to-day determination and interpretation of Veterans' Administration policy").
 
 
 59
 The Robison Court's reading of section 211(a) thus recognizes at least two interpretations of the no-review clause that would permit judicial review in this case. First, the Court indicated that the applicability of section 211(a) depends not only on whether a VA action results from a "decision" by the Administrator, but also on whether such a decision was made in the course of a particular application of a veterans' benefits statute to a specific factual claim. See Arnolds v. Veterans Admin., 507 F.Supp. 128, 130 (N.D.Ill.1981). In doing so, the Court recognized that the express terms of section 211(a) can plausibly be interpreted to preclude judicial review only of those VA decisions applying veterans' benefits law to actual, fact-bound benefit determinations. See, e.g., University of Maryland v. Cleland, 621 F.2d 98, 100-01 (4th Cir.1980); Wayne State Univ. v. Cleland, 590 F.2d 627, 631-32 (6th Cir.1978); cf. Kirkhuff v. Nimmo, 683 F.2d 544, 547 (D.C.Cir.1982) (acknowledging this ambiguity in the express terms of section 211(a)). The plaintiffs in this case, of course, do not challenge any actual application of veterans' benefits law to facts of individual claims.
 
 
 60
 Second, the Robison Court emphasized that section 211(a) can plausibly be read to bar review only where the Administrator makes a decision (of law or fact) under a law, administered by the VA, providing veterans' benefits. The Administrator's decision challenged here, in turn, was not made under any law administered by the VA that provides veterans' benefits. The plaintiffs do not challenge the substance or application of the particular radiation standards adopted; neither do they seek review of the VA's "decision" to adopt agencywide standards in the first place. Instead, the only decision at issue here is the Administrator's decision to deploy agencywide rules without undertaking the notice and comment procedures required by the APA as unequivocally adopted by the VA.[3] In other words, the plaintiffs only seek review of a VA decision interpreting the scope and applicability of the APA's procedural requirements, and the APA, in turn, is certainly not a law administered by the VA that provides for veterans' benefits.
 
 
 61
 The majority nonetheless argues that if we were to limit the preclusion clause to decisions of the Administrator made "under" veterans' benefit laws and allow review of VA decisions interpreting the APA, we would have to allow judicial review of individual benefit determinations to ensure that VA evidentiary assessments were not "arbitrary and capricious" in violation of the APA. See 5 U.S.C. Sec. 706(2)(A). This is plainly not so. The Administrator's factual findings and ultimate assessment of the evidence in individual claim adjudications are unmistakably governed by specific, substantive provisions of the veterans' benefits statutes themselves. See Veterans' Compensation Act Sec. 2(13), 98 Stat. at 2726 (requiring the VA to give the claimant the benefit of the doubt in resolving close cases of service connection); see also 38 C.F.R. Sec. 3.102 (1984). Although the veterans' benefit laws in no way "displace" otherwise applicable APA provisions, a court could not review a VA claim adjudication without reviewing a decision of the Administrator involving the interpretation or application of a substantive legal provision of the VA's organic statute.
 
 
 62
 Although the standard of review would be drawn from the APA, the only VA "decision" under review in that case would be the Administrator's decision to grant or deny benefits pursuant to a provision of the veterans' benefits laws. That decision, in turn, is clearly "typical of fact-specific questions that Congress left to the expertise and shielded from judicial scrutiny by section 211(a)." Carter v. Cleland, 643 F.2d 1, 19 (D.C.Cir.1980). The APA's rulemaking provisions, by contrast, impose duties on an agency that are independent of the standards contained in the agency's organic statute. Judicial review to ensure compliance with APA notice and comment procedures will thus not entail court scrutiny of any VA decision concerning its responsibilities under the veterans' benefit laws themselves as would arbitrary and capricious review.[4]
 
 
 63
 Nothing in the language of section 211(a) suggests that Congress intended to shield from judicial review all VA interpretations of statutes such as the APA that do not provide veterans' benefits and are applicable to agencies throughout the executive branch. Indeed, the majority concedes that section 211(a) does not bar "issues of law decided ... in the course of applying independently operative statutes such as the provisions of the Freedom of Information Act [FOIA] not related to the procedure for administrative decisionmaking." Maj.Op. at p. 907. But the majority would bar review of all interpretations of the APA by the VA regardless of how distorted or freakish they might be. It is by no means obvious to me why section 211(a) dictates that the Administrator's decisions interpreting, say, FOIA's exemption for internal agency decisionmaking concerning veterans' benefits law, see 5 U.S.C. Sec. 552(b)(5), are reviewable, while his decisions as to whether notice and comment are required in a rulemaking under the APA, see 5 U.S.C. Sec. 551(4), are not. No such refined distinction emerges from the plain language of that section. And there is certainly no indication that Congress intended to establish the VA as the final arbiter of every government-wide statute--a result that would raise substantial constitutional questions. Cf. Robison, 415 U.S. at 366-67 & n. 8, 94 S.Ct. at 1165-66 & n. 8 (noting that section 211(a) should be interpreted to avoid such constitutional questions). At the very least, these plaintiffs' attempt to vindicate an interest in procedural regularity under the APA is plausibly outside the scope of section 211(a)'s express language. Cf. National Ass'n of Home Health Agencies v. Schweiker, 690 F.2d 932, 936-37 (D.C.Cir.1982) (holding that preclusion provision in the Social Security Act does not bar suits challenging the Secretary's failure to comply with the notice and comment provisions of the APA), cert. denied, 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983); Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070, 1080-82 (D.C.Cir.1978) (same).[5]
 
 
 64
 The majority's sweeping reading of section 211(a) to bar every lawsuit concerning veterans' benefits other than a direct constitutional challenge to VA legislation breeds other serious constitutional problems as well. Suppose, for example, the VA decided to issue regulations retroactively terminating class-wide benefits without affording the affected claimants any procedural protection. In the absence of section 211(a), a federal court would certainly have jurisdiction to determine the process due the adversely affected individuals under the fifth amendment and the relevant veterans' benefits statutes. Cf. Mathews v. Eldridge, 424 U.S. 319, 326-32, 96 S.Ct. 893, 898-901, 47 L.Ed.2d 18 (1976). The majority says section 211(a) would preclude judicial review of any such VA action; a class-wide termination regulation, after all, constitutes a decision of the Administrator made in the course of applying veterans' benefits law.[6] Yet this circuit has clearly indicated that Robison compels a court to reject strictly literalist interpretations of no-review clauses that would preclude judicial review of constitutional challenges to agency procedures.
 
 
 65
 [I]f legislation by Congress purporting to prevent judicial review of the constitutionality of its own actions is itself constitutionally suspect, legislation that frees an administrative agency from judicial scrutiny of its adherence to the dictates of the Constitution must pose grave constitutional questions as well. Not only is it daring to suggest that Congress, though subject to the checks and balances of the Constitution, may create a subordinate body free from those constraints; it also beggars the imagination to suggest that judicial review might be less crucial to assuring the integrity of administrative action than it is to make certain that Congress will operate within its proper sphere. If the courts are disabled from requiring administrative officials to act constitutionally, it is difficult to see who would perform that function. We say that a statute purporting to foreclose judicial redress of constitutional violations allegedly perpetrated by an administrative agency must be construed in accordance with the standards articulated in Johnson v. Robison.
 
 
 66
 Ralpho v. Bell, 569 F.2d 607, 620 (D.C.Cir.1977) (footnotes omitted); see also Carter v. Cleland, 643 F.2d 1, 5 (D.C.Cir.1980) (discussing Ralpho in the context of section 211(a)). The majority casts aside these concerns on the ground that Congress plainly meant it to be so. See Maj.Op. at p. 914. Yet I see manifest ambiguities in the express terms of the no-review clause. And Robison and Ralpho direct us to avoid, whenever possible, sweeping "plain language" constructions of no-review provisions such as the majority's without first undertaking a searching inquiry into congressional intent.[7]
 
 
 67
 On balance, then, the argument that the plain language of section 211(a) bars review here ignores patent ambiguities in the statute, substantial constitutional and practical difficulties, and the established presumption in favor of judicial review of administrative action. Faced with these countervailing factors, we should not rest our decision solely on an assertion that the express statutory language of section 211(a) can plausibly be read to preclude review whenever the Administrator makes a decision relating to veterans' benefits law. Instead, we are directed to examine the history, purpose and overall structure of section 211(a) in order to determine whether Congress expressed a sufficiently clear intent to overcome the general presumption in favor of judicial review. See Block, 104 S.Ct. at 2456.
 
 II. SECTION 211(a)'s LEGISLATIVE HISTORY
 
 68
 Nothing in the purposes or history of section 211(a), in turn, indicates that Congress sought to bar review of an unlawfully promulgated VA rulemaking. To begin with, the Robison Court authoritatively determined that Congress enacted section 211(a) to serve "two primary purposes: (1) to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and (2) to insure that technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made." Id. 415 U.S. at 370, 94 S.Ct. at 1167. Judicial review aimed at ensuring VA compliance with the notice and comment provisions of the APA will not contravene either purpose. See generally Evergreen State College v. Cleland, 621 F.2d 1002, 1007-08 (9th Cir.1980). Determining the single issue of whether the VA's radiation methodology constitutes a rule subject to APA procedures will not "lead to an inevitable increase in litigation with consequent burdens of the courts and the Veterans' Administration." Id. 415 U.S. at 371, 94 S.Ct. at 1168. As the district court rightly noted, the plaintiffs do not seek review of individual benefit determinations and they do not challenge the substance of the alleged rules. See Gott v. Nimmo, No. 80-0906, slip op. at 3 (D.D.C. Feb. 17, 1982). The only issue raised in this appeal concerns the VA's responsibility to comply with the notice and comment provisions of the APA--a matter of procedure and practice common to all members of the relevant class. No rash of litigation will be spawned by our review of this limited, though important, issue. Cf. Wayne State, 621 F.2d at 632; Plato v. Roudebush, 397 F.Supp. 1295, 1303 (D.Md.1975); see generally Morris, Judicial Review of Non-Reviewable Administrative Action: Veterans Administration Benefits Claims, 29 Ad.L.Rev. 65, 68-70, 84-85 (1977).
 
 
 69
 The majority nonetheless insists that review of this claim will necessarily entangle the judiciary in the day-to-day operations of the VA because courts will have to ensure that the VA complies with any invalidation of its rules. See Maj.Op. at p. 910 ("Our order is a vain act ... unless we can review subsequent adjudications for compliance.") (emphasis in original). But that is not necessarily so. To the extent that judicial invalidation of the challenged VA standards results in a formal rulemaking, we will ensure that the plaintiffs in this case (various veterans and veterans' groups) participate, through the notice and comment provisions of the APA, in the formulation of agencywide radiation exposure standards. It is precisely this independent interest in notice and participation that the plaintiffs assert in this case, see Complaint paragraphs 76-79, 82-83, that the district court found violated by the VA's actions, see Gott v. Cleland, No. 80-0906, slip op. at 4-5 (D.D.C. Feb. 17, 1982), and that the rulemaking provisions of the APA are designed to protect, see, e.g., Batterton v. Marshall, 648 F.2d 694, 703 (D.C.Cir.1980); Pickus v. United States Bd. of Parole, 507 F.2d 1107, 1112 (D.C.Cir.1974). Indeed, Congress unequivocally affirmed this independent, class-wide interest in notice and participation in its recent passage of the Veterans Compensation Act which explicitly requires a public, APA rulemaking concerning some radiation exposure standards. See Sec. 5(c), 98 Stat. at 2729; see also supra note 1.
 
 
 70
 The review sought here will likewise not violate the second purpose of section 211(a); it will not, that is, involve the courts in the substantive complexities of VA policymaking or pose any threat to the uniformity of VA decisionmaking. The plaintiffs in this case do not seek review of a VA factfinding, an interpretation of any veterans' benefits statute, or an application of a veterans' benefits law to any particular factual situation. Because those matters are neither threatened nor contested here, judicial review of the VA's adherence to the rulemaking provisions of the APA will not involve the courts in the agency's expert functions. See Wayne State, 590 F.2d at 331; Plato, 397 F.Supp. at 1303; cf. Home Health, 690 F.2d at 940-41 (noting that review of medicare regulations to ensure compliance with APA procedures is unrelated to disbursement disputes and therefore will not intrude upon agency expertise); see generally Note, Congressional Preclusion of Judicial Review of Federal Benefit Determinations: Reasserting Separation of Powers, 97 Harv.L.Rev. 778, 793-94 (1984). Indeed, determining whether the VA's radiation exposure methodologies are "rules" subject to the APA is peculiarly within the competence of the judiciary, 244 U.S.App.D.C. 215>>diciary. Cf. Robison, 415 U.S. at 368, 94 S.Ct. at 1166 (noting that constitutional challenges do not implicate agency expertise); Note, 97 Harv.L.Rev. at 794-95.
 
 
 71
 Moreover, the majority cannot point to "specific legislative history," Block, 104 S.Ct. at 2456, indicating a congressional intent to preclude judicial review of an unlawfully promulgated VA rule. Prior to 1970, section 211(a) read:
 
 
 72
 The decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power to review any such decision.
 
 
 73
 72 Stat. 1115 (1958) (emphasis supplied). This version of section 211(a) strongly supports the view that the provision was primarily intended to bar judicial review of individual benefit decisions.[8]
 
 
 74
 The majority suggests that the "natural conclusion" arising from Congress' removal of the phrase "concerning a claim for benefits or payments" is that Congress intended to extend the no-review clause to cover any kind of VA decision "relating to" veterans' benefits. See Maj.Op. at pp. 908 - 09. Yet the Robison Court expressly concluded that the only clear purpose of the amendment was to overrule an erroneous judicial interpretation of the pre-1970 statute. See Robison, 415 U.S. at 371-74, 94 S.Ct. at 1167-69. In a series of cases beginning in 1958, this court had held that certain individual claims determinations were subject to judicial review despite section 211(a) by reading the term "claim" very narrowly. See Tracy v. Gleason, 379 F.2d 469 (D.C.Cir.1967); Thompson v. Gleason, 317 F.2d 901 (D.C.Cir.1962); Wellman v. Whittier, 259 F.2d 163 (D.C.Cir.1958). The House Report accompanying the 1970 amendments clearly states that the language change was designed to reject the "fairly tortured construction adopted by the court of appeals in the Wellman, Thompson, and Tracy holdings." H.R.Rep. No. 1166, 91st Cong., 2d Sess. 11 (1970), U.S.Code Cong. & Admin.News 1970, p. 3731. In particular, Congress feared that judicial review might be extended under those decisions to "millions of decisions terminating or reducing many types of benefits provided under laws administered by the Veterans' Administration. Such review might even extend to the decisions of predecessor agencies made many years ago." Id. at 24, U.S.Code Cong. & Admin.News 1970 p. 3742 (emphasis added).
 
 
 75
 Thus, as the Robison Court recognized, "the 1970 amendment was enacted to overrule the interpretation of the Court of Appeals for the District of Columbia Circuit, and thereby restore vitality to the two primary purposes to be served by the no-review clause." Robison, 415 U.S. at 373, 94 S.Ct. at 1168; see Daylo v. Administrator of Veterans' Affairs, 501 F.2d 811, 819-20 (D.C.Cir.1974) (same). As Senator Talmadge described the 1970 amendment, its purpose was "to clarify congressional intent that all decisions of the Administrator of Veterans' Affairs on questions of entitlement to veterans' benefits are final." 116 Cong.Rec. 23377 (July 9, 1970) (emphasis added). Similarly, Representative Teague explained that the provision merely "reiterates the longstanding policy and requirement found in the VA laws, namely, that in any question of law or fact concerning a claim for benefits under any law administered by the Veterans' Administration the judgment of the Administrator of Veterans' Affairs shall be final." 116 Cong.Rec. 26489 (July 30, 1970) (emphasis added). Nothing in the legislative history indicates that Congress intended to restrict judicial review of decisions other than claim determinations, which were the only decisions precluded from review before 1970.
 
 
 76
 I proffer this last proposition with full knowledge that the Administrator in 1970 voiced his fear that "suits similar to the several hundred already filed can--and undoubtedly will--subject nearly every aspect of our benefit determinations to judicial review, including rating decisions, related Veterans' Administration regulations, Administrator's decisions, and various adjudication procedures." Letter from Donald Johnson to the Committee on Veterans' Affairs (June 9, 1970), reprinted in H.R.Rep. No. 1166, 91st Cong., 2nd Sess. 23 (1970). This familiar bureaucratic parade of horribles designed to evoke concern about the breadth of judicial review is not, however, a very reliable indicator of congressional intent concerning the 1970 amendment. Significantly, a few paragraphs later in the letter, the Administrator endorses H.R. 17564, which was not enacted, but which "would define the term 'claim' to include an application for benefits or payments under any law administered by the Veterans' Administration; the assertion of rights to continuance, nonreduction, or restoration of any such benefits or payments." See id. at 24. It therefore seems to me that neither Congress--nor even the Administrator--intended to do anything more than preserve or restore the original meaning and purpose of the no-review clause, namely that courts were precluded from reviewing actual benefits claims. At the very least, "[n]othing whatever in the legislative history of the 1970 amendment, or predecessor no-review clauses, suggests any congressional intent to preclude judicial cognizance of ... challenges ... that cannot be expected to burden the courts by their volume" or to "involve technical considerations of Veterans' Administration policy." Robison, 415 U.S. at 373, 94 S.Ct. at 1169; see also id. at 371, 94 S.Ct. at 1167 ("The legislative history of the 1970 amendment indicates nothing more than a congressional attempt to preserve [the] two primary purposes" of section 211(a).) (emphasis added).
 
 
 77
 The legislative history of the recently passed Veterans Compensation Act also reinforces the view that Congress has never intended to preclude judicial review to determine whether a VA rulemaking complies with APA procedures. The Senate-passed version of that act required the VA to conduct a rulemaking on radiation compensation standards and provided that the rulemaking would be subject to judicial review as provided in the APA. See S.1651, reprinted in 130 Cong.Rec. S6148-49 (daily ed. May 22, 1984). The judicial review provision was eventually dropped on the explicit assumption of its leading proponent, relayed to the Senate, that judicial review of a VA rulemaking--as opposed to an individual claim--was already available under section 211(a). Senator Simpson, Chairman of the Senate Committee on Veterans' Affairs and the act's chief Senate sponsor, expressed full concurrence with the following statement of Senator Cranston, the chief Senate majority conferee who described of the reviewability of regulations under section 211(a) as follows:
 
 
 78
 As our negotiations with the House committee on this legislation progressed over the last several months, I became concerned that permanently holding firm to my position on including an express reference to access to court review might prevent our ever reaching an overall compromise. However, I would have pursued this issue to and throughout a formal conference had I not concluded, as I will discuss below, that including such express reference to access to court review in the legislation, as the Senate had done, was not necessary to there being access to court to test the Administrator's compliance with the mandated rulemaking process....
 
 
 79
 Mr. President, as the author of the statutory provision in the compromise agreement which will require the Administrator to issue regulations in accordance with the rulemaking provisions of the Administrative Procedure Act, section 553 of title 5, United States Code, it has been my unequivocal intent that such court review would be available and, as I noted, I am satisfied that the case law supports that result.
 
 
 80
 130 Cong.Rec. S13591, S13598 (daily ed. Oct. 4, 1984).
 
 
 81
 Senator Cranston, also described at length the rationale behind allowing judicial review notwithstanding section 211(a) "when the validity of a procedure or a regulation promulgated by the VA, rather than the merits of an individual claim, is the primary issue." Id. at S13600 (quoting a staff memorandum). As he explained:
 
 
 82
 In these instances, cost or workload concerns have been found not to bar review, because to the extent that such review does not involve the courts in individual benefit determinations, but simply enables them to pass upon the lawfulness of procedures and regulations, it places only minimal burdens on judicial and administrative resources. Similarly, where the claim is that the regulation or proc[e]dure violates the constitution or authorizing statute, it is peculiarly within the competence of the judiciary and the grant of review has generally been f[o]und not to intrude upon the expert functions performed by the agency. Conversely, the courts have almost universally denied review where the challenge involved only the application of eligibility standards to an individual claim for benefits. Here, both the specter of burdensome litigation and the V.A.'s arguably superior expertise in applying a substantive statutory or regulatory standard to an individual set of facts are often cited to justify preclusion of judicial review.
 
 
 83
 Id.; see also id. (statement of Sen. Cranston) (discussing Wayne State Univ. v. Cleland, 590 F.2d 627 (6th Cir.1978)). Indeed, virtually every member of the Senate Veterans' Affairs Committee stated on the floor that the Senate had acted in reliance on the fact that section 211(a) and VA policy allows judicial review of VA regulations. See id. at S13608 (statement of Sen. Specter); id. at S13609 (statement of Sen. Matsunaga); id. at S13610 (statement of Sen. Mitchell). To my knowledge, nothing in the legislative history of the 1984 act indicates the contrary.
 
 
 84
 Although post-enactment legislative developments are certainly not controlling evidence of the intent of an earlier Congress, see, e.g., Universities Research Ass'n v. Coutu, 450 U.S. 754, 778, 101 S.Ct. 1451, 1465, 67 L.Ed.2d 662 (1981), they can, in appropriate circumstances, be used to show that key committee members shared and acted upon a prevailing view concerningCITE, 244 U.S.App.D.C. 218>>ing the meaning of a statute they oversaw. See, e.g., Grove City College v. Bell, --- U.S. ----, 104 S.Ct. 1211, 1219, 79 L.Ed.2d 516 (1984); Bell v. New Jersey, 461 U.S. 773, 784-87, 103 S.Ct. 2187, 2193-95, 76 L.Ed.2d 312 (1983); Andrus v. Shell Oil Co., 446 U.S. 657, 668-72, 100 S.Ct. 1932, 1939-41, 64 L.Ed.2d 593 (1980); Rettig v. Pension Benefit Guarantee Corp., 744 F.2d 133, 149 & n. 43 (D.C.Cir.1984); Office of Communications of the United Church of Christ v. FCC, 707 F.2d 1413, 1429 n. 48 (D.C.Cir.1983). In this case, of course, the clearly expressed belief of the recent 98th Congress that courts can review a VA rulemaking is consistent with Robison's interpretation of the central purposes of section 211(a) and with the view, supported by earlier legislative history, that the statute was primarily aimed at individual benefit determinations. This, I believe, is to some degree probative in establishing that Congress did not express a "fairly discernible" intent to preclude review aimed at ensuring compliance with APA procedures. Given the general presumption favoring judicial review of administrative action, evidence of a current general congressional understanding that unlawfully promulgated regulations are reviewable casts grave doubt on the majority's tortured conclusion that Congress specifically intended to prevent review of any VA "decision" relating to veterans' benefits law when it amended section 211(a) in 1970.
 
 
 85
 Taken as a whole, then, the relevant legislative history does not indicate any intent to bar review of the plaintiffs' claim that the VA's rulemaking was procedurally invalid; indeed, it suggests that Congress sought to insulate only individual benefit determinations from court scrutiny.[9]
 
 
 86
 III. THE ADMINISTRATOR'S INTERPRETATION OF SECTION 211(a)
 
 
 87
 Congress, moreover, relied in its 1984 legislation on the Administrator's opinion that section 211(a) does not preclude judicial review of unlawfully promulgated VA rules. Senator Cranston, for example, emphasized the present Administrator's statement that "[s]hould the VA promulgate regulations in excess of lawful authority, federal court action is certainly available to the adversely affected veterans." 130 Cong.Rec. S13598 (daily ed. Oct. 4, 1984). The legislative history of the 1984 act also includes an exchange of letters between Senator Cranston and then-Administrator Robert Nimmo concerning the scope of section 211(a) and its applicability to the very case before us. See 130 Cong.Rec. S6159-61 (daily ed. May 22, 1984). The Administrator unmistakably stated to Congress that the VA did not consider section 211(a) a bar to judicial review of VA regulations, procedures or agencywide standards.
 
 
 88
 [W]e have not been unmindful of the Committee's concerns about the scope of section 211(a), particularly in the context of your current consideration of judicial review legislation. I continue to believe that VA regulations should be, and are, reviewable in the Federal courts. This principle was further explained by the Acting General Counsel last summer, when he indicated to the Committee that "legislation, regulations, and procedures" are judicially reviewable, as are "substantive Agency actions of broad, binding application."
 
 
 89
 Section 211(a) has been properly limited by the courts so that it does not protect every decision, policy, or action of the VA from judicial scrutiny. Those Agency rules and procedures of broad and binding application which affect the rights of a number of claimants to VA benefits are not protected by section 211(a). The way the VA processes and decides an individual benefit claim is clearly beyond the reach of the Federal courts, however. Because the three written provisions challenged in Gott do not, in our opinion, provide criteria for decision-making and are merely procedural and instructional, they do not dictate the substantive decision in any individual case.
 
 
 90
 Letter from Robert Nimmo to Alan Cranston (March 29, 1982), reprinted in 130 Cong.Rec. S6160 (daily ed. May 22, 1984).[10] Thus the VA has recently adopted--and presented to Congress--precisely the interpretation of section 211(a) rejected by the majority. Similarly, the Administrator has consistently indicated to Congress that the no-review clause does not, as the majority concludes today, preclude judicial review of every VA "decision" relating to veterans' benefits law.[11]
 
 
 91
 The Administrator's 1984 statement to Congress underscores perhaps the most crucial problem created by the majority's ruling today. Congress' reliance on the Administrator's recent position before the Senate that the no-review clause does not limit judicial review of an unlawfully promulgated VA rulemaking is itself "persuasive evidence" of the appropriate scope of section 211(a). See Grove City, 104 S.Ct. at 1219. The Administrator presented Congress with a clearcut administrative interpretation of section 211(a) and Congress relied on that view in 1984, not only by failing to reject it, but by refraining from taking action in new legislation already passed by one house of Congress to write that interpretation into law. As the Grove City Court reminded, "Congress' failure to disapprove the regulations is not dispositive, but ... it strongly implies that the regulations accurately reflect congressional intent. Congress has never disavowed this implication and in fact Congress has acted consistent with it on a number of occasions." Id. Of course, the indication of congressional reliance on an agency interpretation is much stronger in this case than it was in Grove City. Congress and the VA have in effect agreed that section 211(a) does not bar every VA decision relatingCITE, 244 U.S.App.D.C. 220>>ing to the veterans' benefits statutes as the majority now concludes, and Congress has consistently acted in reliance on that interpretation. See supra note 11. In 1984, moreover, Congress specifically acted on the view that the no-review clause does not bar review of unlawfully promulgated VA regulations. While an agency cannot create jurisdiction through a patently unreasonable reading of a preclusion statute, a reasonable agency position certainly deserves serious consideration when a court is faced with several permissible interpretations. Cf. Chevron, U.S.A. v. Natural Resources Defense Council, --- U.S. ----, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). I cannot understand how the majority, with one wave of the judicial wand, can simply ignore the agency's view and flatly proclaim that the "plain language" of section 211(a) bars review of any VA "decision" even remotely related to veterans' benefits.
 
 IV. CONCLUSION
 
 92
 Judicial review to ensure that VA rulemakings comply with the notice and comment provisions of the APA would not frustrate any "fairly discernible" congressional intent to preclude court scrutiny of certain VA actions. The specific language of section 211(a), as interpreted in Robison, is not sufficiently unambiguous to carry the burden of demonstrating a specific intent to preclude review of a VA rulemaking to ensure compliance with the APA. The purpose, legislative history and overall structure of the provision, in turn, indicate that Congress did not seek to bar review of a VA rulemaking that admittedly violates the notice and comment provisions of the APA. Moreover, the VA has told Congress that it does not interpret the no-review clause to insulate VA rulemakings from court scrutiny. Given all of this, the case for the majority's all-preclusive reading of section 211(a) must fail. That interpretation, even if plausible standing by itself, is by no means mandatory and, against the backdrop of legislative history, it falls far short of overcoming the presumption favoring judicial review of administrative action. At bottom, today's decision not only ignores the relevant indicators of congressional intent but also constitutes rank judicial interference with a reasonable statutory interpretation agreed upon by both political branches of government.
 
 Accordingly, I dissent.[12]
 
 
 *
 Opinion and judgment vacated, see 791 F.2d 172
 
 
 [1]
 The requirement that substantive rules be published in the Federal Register is contained in 5 U.S.C. Sec. 552 (1982), generally known as the Freedom of Information Act. It antedates most of the other provisions of that section, however, and was (in slightly different form) Sec. 3(a)(3) of the original Administrative Procedure Act. 60 Stat. 238, ch. 324 (1946). Also unlike most of the other provisions of that section, it establishes a procedural prerequisite for the validity of agency action. In this opinion, therefore, we do not adopt the plaintiffs' characterization of their nonpublication claim as an alleged violation of the Freedom of Information Act, but rather of the Administrative Procedure Act
 
 
 [2]
 Strictly speaking, veterans' claims are "a matter relating to ... benefits" and therefore exempt from the rulemaking requirements of the APA. 5 U.S.C. Sec. 553(a)(2) (1982). However, the VA has provided by rule that it will abide by the APA's procedures, with authority to make exceptions where the APA permits exceptions. 38 C.F.R. Sec. 1.12 (1984). (It has not been contended that the agency has not complied with its prescribed procedures for invoking these exceptions.) Thus, this case technically involves not the agency's required compliance with the APA, but its required compliance with its own rules which incorporate the APA by reference. See Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). For purposes of simplicity, the distinction will be disregarded in this opinion
 
 
 [3]
 Their complaint also charged that changing the Program Guide without notice deprived them of property without due process of law. This constitutional claim, which was not pursued below and has not been raised in this appeal, is insubstantial. Even if the due process clause does impose some procedural requirements with regard to the initial conferring, as opposed to the withdrawal (see Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)) of benefits, there is no conceivable reason why the opportunity to challenge the application of the new Program Guide in the individual claims proceedings would not be entirely adequate
 
 
 [4]
 The Government has raised a different jurisdictional problem on appeal, asserting that the case has been mooted by passage of the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98-542, 98 Stat. 2725 (1984) (to be codified at 38 U.S.C. Sec. 354 & note), which requires the VA to promulgate regulations, in accordance with specified policies, for dealing with claims for death or illness assertedly caused by radiation during military service. That is not clear. While the Administrator will presumably decide to use the new regulations to redetermine claims previously adjudicated by use of the documents and methodologies here under challenge, the legislation does not of its own force affect those earlier adjudications, nor does it explicitly require benefits to be paid retroactively. See 38 U.S.C. Sec. 3010(a) (1982), providing that as a general rule "the effective date of an award based on ... a claim reopened after final adjudication ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of application therefor." The prayer for relief in the present case, by contrast, requests the court to "[d]eclare that ... decisions denying disability and death benefit claims ... in accordance with the unlawfully promulgated rules are null and void," J.A. 33-34; and the District Court in effect granted this relief, declaring that "[c]laims decisions such as these based on invalid rules are not res judicata," and that the VA must "treat any new claims filed by plaintiffs as dating back to when the original claim was filed." Gott v. Cleland, Civil No. 80-0906 (Dec. 15, 1981) (Order). We cannot confidently conclude that the new statute provides precisely comparable relief
 
 
 [5]
 That the modifying phrase "under any law administered by the Veterans' Administration" goes with the word "decisions" rather than with the phrase "question of law or fact" is demonstrated by the Supreme Court's italicization of the statutory passage in Robison: "[T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans...." 415 U.S. at 367, 94 S.Ct. at 1166 (emphasis in original)
 
 
 [6]
 We do not suggest approval of that portion of Leib which holds that the Privacy Act is also such a statute. Portions of that law relate to the manner in which claims decisions are to be made under the benefits laws--viz., the data that are to be maintained and considered, see 5 U.S.C. Sec. 552a(e)(5). Thus, a civil suit under 5 U.S.C. Sec. 552a(g)(1)(C) would in effect require review of a claims determination. See Rosen v. Walters, 719 F.2d 1422, 1423-25 (9th Cir.1983)
 
 
 [7]
 Instead of removing the phrase "concerning a claim for benefits," it would have "define[d] the term 'claim' to include an application for benefits or payments under any law administered by the Veterans' Administration; the assertion of rights to continuance, nonreduction, or restoration of such benefits or payments; and the assertion of rights to such benefits or payments which have been found to be forfeited...." H.R.REP. NO. 1166, supra at 24, 1970 U.S.CODE CONG. & AD.NEWS 3743. That approach is unquestionably less (if at all) suited to assuring no review of regulations than the amendment actually adopted--which may simply suggest that the VA thought regulations were already covered by the pre-1970 provision, except regulations that might be challenged in connection with claims of the sort which this circuit's decisions had excluded
 
 
 [8]
 The dissent evidently believes that it is possible to review "the VA's adherence to the rulemaking provisions of the APA" without "involv[ing] the courts in the agency's expert functions." Dissent at 923. That seems quite impossible unless the APA is to be sucked dry of its content. One can hardly determine, for example, whether the agency has provided an adequate "statement of ... basis and purpose," 5 U.S.C. Sec. 553(c), which includes "respon[se] to significant points raised by the public," Action on Smoking and Health v. CAB, 699 F.2d 1209, 1217 (D.C.Cir.1983),--or indeed even whether the rule in question is a substantive rule rather than a procedural rule to which certain APA procedures do not apply, see 5 U.S.C. Sec. 553(b)(A)--without entering into an analysis of the substance of the matter at hand. The requirement that the agency's rule not be "arbitrary [or] capricious," 5 U.S.C. Sec. 706(2)(A) is also imposed by the APA
 
 
 [9]
 Even if it were so, with the result that the proper method for deciding whether a particular appeal runs afoul of Sec. 211(a) is simply to proceed at once to determine whether review would impair the two statutory policies Robison identified, we would still conclude, for reasons described in our earlier discussion, see pages 909 - 10, supra, that the review sought here is unavailable. See generally Carter v. Cleland, 643 F.2d at 9
 
 
 [10]
 The Wayne State court's only other argument for review of claims that VA regulations exceeded the VA's statutory authority was that any other interpretation would make Sec. 211(a) constitutionally suspect. It did not identify what constitutional problems would be posed except to cite the pages of Johnson v. Robison where the Supreme Court made that argument for finding that Sec. 211(a) did not preclude review of statutes for unconstitutionality. Wayne State, 590 F.2d at 632 & n. 13, citing Robison, 415 U.S. at 366 & n. 8, 94 S.Ct. at 1165 & n. 8. We have considered this question carefully in the context of denials of review of adjudications and have concluded that there is no constitutional infirmity, at least in precluding review of nonconstitutional issues, because "[t]he Supreme Court has declared that 'the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts;' 'it may,' instead, 'provide an administrative remedy and make it exclusive....' That is precisely what Congress did in the current version of Section 211(a), and Congress was well within its legislative prerogatives when it did so." De Rodulfa v. United States, 461 F.2d 1240, 1258 (D.C.Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972) (citations omitted). See also Rosen v. Walters, 719 F.2d at 1423. If the Constitution does not require Congress to provide judicial review of the individual adjudications themselves, a fortiori it does not require judicial review for rules whose only effect is to determine the outcome of those adjudications
 
 
 [11]
 It is not the case, as the dissent asserts, that the adjudicatory procedures specified in the veterans' benefits laws displace the otherwise applicable provisions of the APA. See Dissent at 919 n. 3. Since displacement of the APA by implication is disfavored, see 5 U.S.C. Sec. 559, those APA informal adjudication requirements that do not conflict with what the VA statutes provide are assuredly not superseded
 
 
 [12]
 The dissent's response to this is that "the Administrator's selective defiance of [his] regulations" is "no more related to any provision of the veterans' benefit statutes than a VA decision to defy the APA's notice and comment provisions in this case but not the next." Dissent at 919 n. 3. This suggests that the dissent's test for establishing that agency action is taken "under" the VA statutes for purposes of the judicial review provision is even more uncertain (and more restrictive) than we had supposed. Evidently it is not only insufficient that the action was taken in the course of administering those statutes; but it is also not enough that the provision allegedly violated (here, the rulemaking requirement) was imposed by or under those statutes. Rather, the test seems to be whether evaluation of the violation depends upon some specific provision of those statutes rather than upon some more general principle of law (in the present case, the principle that an agency must comply with its own regulations). It is hard to square this with the dissent's simultaneous assertion that review for compliance with the APA's evidentiary requirements, or with the APA's "arbitrary or capricious" standard is a "spectre" entirely of our imagination. Dissent at 920 n. 4. Surely the determination that a particular piece of evidence credited by the agency was entirely unreliable would be based upon general principles of law rather than upon anything peculiar to the VA statutes; similarly, the determination that a particular rule is arbitrary because it inexplicably contradicts another rule. We confess that our comprehension of the line the dissent wishes to draw is inadequate for any purpose except the conclusion that it makes no policy sense and is assuredly not to be found in the text of the statute
 
 
 [1]
 During the pendency of this appeal, Congress enacted the Veterans' Dioxin and Radiation Exposure and Compensation Standards Act, Pub.L. No. 98-542, 98 Stat. 2725 (1984) (to be codified at 38 U.S.C. Sec. 354 & note) ["Veterans Compensation Act"]. That act requires that the VA undertake a rulemaking, subject to the notice and comment provisions of the APA, aimed at establishing regulations for determining the service connection of disability claims based on radiation exposure during the American occupation of Hiroshima and Nagasaki prior to July 1, 1946. See id. Secs. 5(a), 5(c), 98 Stat. at 2727, 2729. The required regulations will presumably displace the current VA methodologies challenged here. Accordingly, the 1984 act obviates a crucial aspect of the plaintiffs' claim that the VA must abide by the APA if it chooses to employ agencywide radiation exposure standards
 I agree with the majority, however, that this case is not thereby rendered moot. See Maj.Op. at p. 905 n. 4. I should note, however, that the district court expressly denied the plaintiffs' request to invalidate VA decisions denying benefits under the unlawful rules, see Gott v. Cleland, No. 80-0906 (D.D.C. Dec. 15, 1981) (order) and the plaintiffs have not appealed that order. Contrary to the majority's suggestion, see Maj.Op. at p. 905 n. 4, this appeal does not present any question concerning the validity of benefit determinations made under the challenged standards. The plaintiffs in this case also include several veterans allegedly exposed to radiation while participating in atmospheric nuclear weapons testing in the United States; the 1984 act does not clearly require the VA to issue regulations concerning their claims in the near future.
 
 
 [2]
 A majority of the federal courts that have considered the scope of section 211(a) have concluded that the no-review clause should not be interpreted to bar judicial scrutiny of a variety of VA "decisions" relating to veterans' benefits law. See, e.g., American Fed'n of Gov't Employees v. Nimmo, 711 F.2d 28, 31 (4th Cir.1983) ("[C]ourts are not precluded from considering the VA's statutory authority for promulgating regulations and the constitutionality of its actions."); Evergreen State College v. Cleland, 621 F.2d 1002, 1007-08 (9th Cir.1980) (section 211(a) does not bar review to determine whether VA regulations exceed its statutory authority); University of Maryland v. Cleland, 621 F.2d 98, 100-01 (4th Cir.1980) (same); Merged Area X (Education) v. Cleland, 604 F.2d 1075, 1078 (8th Cir.1979) (same); Wayne State Univ. v. Cleland, 590 F.2d 627, 631-32 (6th Cir.1978) (same); Arnolds v. Veterans Admin., 507 F.Supp. 128, 130-31 (N.D.Ill.1981) (section 211(a) does not bar review where VA procedures allegedly violate the due process clause); Plato v. Roudebush, 397 F.Supp. 1295, 1301-04 (D.Md.1975) (same)
 In each of these cases, courts have emphasized that the issue presented was not whether the VA had correctly decided to grant or deny benefits, but rather whether the VA had exceeded its statutory grant of authority or had acted in violation of rights guaranteed by the fifth amendment. This case presents a far stronger claim for judicial review because the plaintiffs challenge only the VA's decision not to comply with the APA's procedural requirements--a decision quite unrelated to any substantive interpretation or application of veterans' benefits law. In my view, then, we need not conclude that section 211(a) only applies to individual benefit determinations in order to assume jurisdiction in this case. Compare Wayne State, 590 F.2d at 631-32. I do, however, believe that the evidence that Congress primarily intended section 211(a) to bar court scrutiny of individual benefit claims is relevant in determining whether Congress expressed a sufficiently clear intent to bar the procedural review asserted here. See supra pp. 905 - 06, 909, 910 - 12.
 
 
 [3]
 As the majority points out, see Maj.Op. at p. 904 n. 2, the APA's notice and comment rules do not apply of their own force to government benefit decisions. See 5 U.S.C. Sec. 553(a)(2). The VA has nonetheless adopted the APA's rulemaking provision by regulation, see 38 C.F.R. Sec. 1.12 (1984), and thus the VA's failure to comply with its own regulations is technically the issue in this case. Courts, of course, have long required agencies to abide by their own procedural regulations even when those regulations create more requirements than the Constitution or otherwise applicable statutes. See, e.g., Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). The majority nonetheless argues that the Administrator's particular defiance of his own regulations in this case is shielded from judicial review by section 211(a) because the VA's earlier decision to adopt notice and comment rules can be characterized as a decision relating to veterans' benefit law. See Maj.Op. at pp. 913 - 14
 This argument flies in the face of this circuit's consistent treatment of regulations such as the VA's that voluntarily adopt otherwise inapplicable APA provisions. Along with many other agencies, the VA adopted its notice and comment rule in 1972 on the recommendation of the Administrative Conference of the United States that all agency action, including benefit matters, should be governed by the APA's notice and comment provisions. See 37 Fed.Reg. 3552 (Feb. 17, 1972). According to the VA:
 Our implementation of the Conference's recommendation should result in greater participation by the public in the formulation of the rules and regulations of the Veterans Administration. The public benefit from such participation should outweigh any administrative inconvenience or delay which may result from use of the public participation procedures.
 Id. In Rodway v. United States Dep't of Agriculture, 514 F.2d 809 (D.C.Cir.1975), we held that a similar administrative decision to adopt APA notice and comment procedures for government benefits decisions "fully bound the agency to comply thereafter with procedural demands of the APA." Id. at 814 (emphasis added); see also Petry v. Block, 737 F.2d 1193, 1197 n. 12 (D.C.Cir.1984) ("Under Rodway ..., the fact that an agency chose to operate under the APA is irrelevant to an analysis of that agency's compliance with its provisions.").
 We have thus squarely held that an agency must act as if the APA's notice and comment provisions are fully applicable to agency rulemakings once it adopts those provisions by regulation. The plaintiffs in this case do not challenge the VA's decision vel non to adopt a notice and comment regulation. Instead, they contest the Administrator's selective defiance of those regulations in this particular instance. That decision seems to me no more related to any provision of the veterans' benefit statutes than a VA decision to defy the APA's notice and comment provisions in this case but not the next. I simply cannot believe that section 211(a) was intended to allow the VA to defy with impunity the traditional, government-wide constraints on agency action embodied in the APA's rulemaking provisions--whether those constraints are rooted in the APA itself or in agency regulations adopting APA notice and comment procedures. See infra pp. 920 - 21.
 
 
 [4]
 Moreover, the only issue presented in this case is whether the VA violated its own regulations adopting the APA's notice and comment procedures. See 5 U.S.C. Sec. 553(b) (requiring public notice in the Federal Register); id. Sec. 553(c) (allowing comment by interested persons). We most assuredly are not confronted here with any question concerning the availability of judicial review to ensure VA compliance with any other APA provision. There is, accordingly, no basis for the majority's assertion that we must accept the proposition that every VA action arguably governed by APA provisions is subject to court scrutiny in order to grant the particular, limited review sought here. See Maj.Op. at pp. 907 - 08 (raising the spectre of review for compliance with APA evidentiary requirements); id. at 910 n. 8 (same for substantive "arbitrary or capricious" review); id. at 913 - 14 n. 12 (same for review to ensure that VA evidence was reliable). Those VA decisions, however, are inextricably intertwined with the VA's implementation of its organic statute. Because the APA's notice and comment provisions impose constraints on the VA that are essentially independent of the veterans' benefits statutes, judicial review to ensure compliance with those provisions, and those provisions alone, does not implicate a decision of the Administrator made under a law, administered by the VA, that provides for veterans' benefits. Deciding that section 211(a) does not bar review of the Administrator's decision not to provide notice and allow comment, in other words, will not "suck[ ]" the APA "dry of its content." Id. at 910 n. 8
 
 
 [5]
 In Heckler v. Ringer, --- U.S. ----, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the Court recently held that a challenge to a Health and Human Services rule disallowing medicare coverage was barred by section 205(h) of the Social Security Act which provides that "[n]o action shall be brought against the ... Secretary ... under sections 1331 or 1346 of title 28 to recover on any claim arising under" the Act. 42 U.S.C. Sec. 405(h). The Ringer plaintiffs argued that the Secretary had violated APA procedures, wrongfully decided the coverage issue by rulemaking rather than adjudication, and was required to extend the requested coverage by the medicare statute. Without specifically discussing the APA claim, the Court held that the plaintiffs were barred from seeking immediate judicial review because the plaintiffs essentially sought to recover individual benefits and the Medicare Act created "both the standing and substantive presentation" of their claims. See Ringer, 104 S.Ct. at 2022 (quoting Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S.Ct. 2457, 2464-65, 45 L.Ed.2d 522 (1975))
 There are, however, significant differences between section 211(a) and the preclusion statute at issue in Ringer. First, Ringer was decided under a no-review clause that bars judicial review of any claim, even a constitutional claim, if the ultimate effect of review would be to grant or deny benefits. See Ringer, 104 S.Ct. at 2025-26; Salfi, 422 U.S. at 760-61, 95 S.Ct. at 2464-65. Robison, however, at least establishes that section 211(a) has a far narrower scope: it does not bar constitutional challenges and it therefore does not preclude every claim that could possibly affect benefit disbursement. Moreover, the Ringer plaintiffs could have brought all of their claims under a separate jurisdictional provision which requires exhaustion of administrative remedies. See 42 U.S.C. Sec. 405(h). Congress' specific intent to require medicare plaintiffs to seek relief in that alternative administrative and judicial forum has been a decisive factor in the Court's interpretation of the medicare preclusion provision. See, e.g., Ringer, 104 S.Ct. at 2021 ("We conclude that all aspects of the plaintiffs' claims for benefits should be channelled first into the administrative process which Congress has provided."); Salfi, 422 U.S. at 750-60, 95 S.Ct. at 2459-64. The majority's interpretation would result in complete preclusion rather than postponement of judicial review, and we cannot assume that the Court would read the phrase "decisions of the Administrator" in section 211(a) to bar the limited review of an APA violation sought in this case.
 
 
 [6]
 The majority cannot respond that review would in fact be available in the hypothetical case, because it presents a constitutional rather than a statutory challenge. See, e.g., Devine v. Cleland, 616 F.2d 1080, 1082-85 (9th Cir.1980) (advancing this argument); Plato, 397 F.Supp. at 1301-04 (same); see also VA Administrative Procedure and Judicial Review Act: Hearings before the Senate Committee on Veterans' Affairs, 95th Cong., 1st Sess. 7 (1977) (statement of the Administrator indicating that the VA accepts the view that section 211(a) does not bar review of VA hearing procedures for compliance with the due process clause). As long as the majority rests its interpretation of section 211(a) on the mere presence of a VA "decision" applying the veterans' benefits laws, only direct constitutional challenges to VA legislation will be possible
 
 
 [7]
 Indeed, had the Robison court thought the phrase "decisions of the Administrator" unambiguous and expressly dispositive of section 211(a) in the sense urged by the majority, it would hardly have undertaken its extensive inquiry into the provision's purposes and legislative history. That inquiry, in turn, strongly supports the availability of judicial review in this case. See supra pp. 922 - 27
 
 
 [8]
 Although the majority insists that the current section 211(a) is unambiguously described by its express language, it nonetheless suggests that we should consult the legislative history of the pre-1970 versions of the no-review clause for evidence that Congress really meant "any decision" when it adopted the phrase "decisions ... concerning a claim for benefits" in 1940. See Maj.Op. at pp. 906-07. I see no justification for this differential approach
 The original no-review clause was contained in section 5 of the Economy Act of 1933, Pub.L. No. 73-2 Sec. 5, 48 Stat. 8, 9 (1933), which created the present Veterans' Administration. That statute provided:
 All decisions rendered by the Administrator of Veterans Affairs under the Provisions of this title ... shall be final and conclusive on all questions of law and fact, and no other official and court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision.
 
 
 [49]
 Stat. at 9 (1933). The majority suggests that we read this earlier version to contradict the "apparent meaning" of the express reference to "claims" that was added in 1940. See 54 Stat. 1197 (1940). Yet, the Supreme Court stated in 1934 that section 5 of the Economy Act
 concerns only grants to veterans and their dependents--pensions, compensation allowances, and special privileges, all of which are gratuities. The purpose of the section appears to have been to remove the possibility of judicial review in that class of cases....
 Lynch v. United States, 292 U.S. 571, 587, 54 S.Ct. 840, 847, 78 L.Ed. 1434 (1934) (emphasis added).
 In support of the 1940 amendment, which added the explicit reference to claims, Senator George stated that "the bill only confirms what has been the accepted belief and conviction that with respect to any pension [or] gratuity, ... there is no right of action in the courts." 86 Cong.Rec. 13,383 (Oct. 8, 1940); see Robison, 415 U.S. at 369 n. 10, 94 S.Ct. at 1166 n. 10. Similarly, in 1952 hearings on proposed amendments to the no-review clause, the VA clearly indicated that the provision was designed only to bar review of individual, fact-bound benefit claims. See Hearings on H.R. 360, 478, 2442 and 6777 Before a Subcommittee of the House Committee on Veterans' Affairs, 82d Cong., 2d Sess. 1962-63 (1952) (discussed as evidence of Congress' pre-1970 intent in Robison, 415 U.S. at 370 nn. 10-12, 94 S.Ct. at 1167 nn. 10-12). Plainly, then, nothing in the pre-1970 legislative history of section 211(a) indicates a congressional intent to preclude judicial review of any VA decisions other than individual benefit determinations; there is certainly no suggestion that Congress meant to bar review of rules promulgated in disregard of APA procedures, and that is the only issue presented here.
 
 
 [9]
 The Supreme Court has also inferred from a statutory scheme an intent to bar review under provisions analogous to section 211(a) when Congress has provided other avenues to judicial review in the same general statute or when some types of review would frustrate a complex administrative and judicial forum. See Block, 104 S.Ct. at 2454-56; Weinberger v. Salfi, 422 U.S. 749, 750-60, 95 S.Ct. 2457, 2459-64, 45 L.Ed.2d 522 (1975); see also Heckler v. Ringer, --- U.S. ----, 104 S.Ct. 2013, 2022-24, 80 L.Ed.2d 622 (1984) (inferring an intent to bar review under one section of the Social Security Act where claimants had an adequate administrative and judicial remedy under another). Clearly, nothing in the structure of veterans' benefits law implies that Congress intended to preclude the limited judicial review sought in this case. Allowing the plaintiffs to challenge the VA's failure to comply with the notice and comment provisions of the APA does not pose any continual challenge to the day-to-day administration and processing of veterans' claims. Neither will it allow individual claimants to circumvent an administrative forum in order to obtain judicial scrutiny of actual benefit determinations. Similarly, it is clear that no other provision of the veterans' benefits statutes provides for judicial review of whether the VA is required to follow APA procedures if it chooses to employ agencywide standards for determining radiation exposure
 
 
 [10]
 The Administrator's decision in this case not to argue on appeal that section 211(a) bars judicial review of the plaintiffs' claim is, of course, consistent with his position before Congress
 
 
 [11]
 In its frequent testimony before Congress, the VA has consistently stated that judicial review of every VA decision relating to veterans' benefit law is not precluded by section 211(a) as the majority now concludes. See, e.g., Hearings on H.R. 360, 478, 2442 and 6772 Before a Subcommittee of the Housing Committee on Veterans' Affairs, 82d Cong., 2d Sess. 1962-63 (1952) (describing section 211(a)'s predecessor as a bar to review of individual claims); H.R.Rep. No. 1166, 91st Cong., 2d Sess. 10-13 (1970) (discussing the need to preserve the no-review clause's original purpose by defining the term "claim" to include any application for benefits) (discussed infra at pp. 924 - 25); VA Administrative Procedure and Judicial Review Act: Hearings Before the Senate Committee on Veterans Affairs, 95th Cong., 1st Sess. 6-9 (1977) (noting that Robinson at least means that judicial review is available for constitutional challenges to VA regulations and procedures); FY '78 Legislative Recommendations of Veterans' Organizations: Hearings Before the Senate Commission on Veterans' Affairs, 95th Cong., 2d Sess. 382-83 (1978) ( " [The Veterans Administration's current position is that court review should be permitted of all constitutional questions arising under its administration of veterans' programs.") (emphasis added); S.Rep. No. 96-178, 96th Cong., 1st Sess. 91 (1979) (stating that Robison "should be logically extended to permit review of all constitutional questions arising under the Veterans' Administration's administration of veterans' programs") (emphasis added). The VA has thus testified that Congress need not act to limit section 211(a) because the current provision allows judicial review of many important VA decisions relating to veterans' benefits law. At the very least, the VA has repeatedly told Congress that section 211(a) has a far narrower scope than the majority's interpretation allows
 
 
 [12]
 The majority's jurisdictional disposition of this case renders inappropriate any detailed discussion of whether the challenged VA documents in fact constitute "rules" subject to the APA. I would hold that at least one of the documents at issue--the so-called Memorandum of Understanding--is a rule under the APA, see 5 U.S.C. Sec. 511(4), because it operates as a virtually presumptive formula in awarding or denying benefits. See Batterton v. Marshall, 648 F.2d 694, 707-08 (D.C.Cir.1980); cf. Guardian Fed. Savings & Loan Ass'n v. Federal Savings & Loan Ins. Corp., 589 F.2d 658, 666-69 (D.C.Cir.1978); Pickus v. United States Board of Parole, 507 F.2d 1107, 1112-13 (D.C.Cir.1974)